## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BRYANT H. HARVEY, JR.,** | ) | |
| **No. M51717,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-00343-NJR** |
| | ) | |
| **STEPHEN B. DUNCAN,** | ) | |
| **BETH TREDWAY,** | ) | |
| **JOHN COE,** | ) | |
| **C/O TANNER,** | ) | |
| **SHERRY BENTON,** | ) | |
| **DR. PHIL MARTIN,** | ) | |
| **CUNNINGHAM,** | ) | |
| **WEXFORD MEDICAL HEALTH** | ) | |
| **SERVICES CO.,** | ) | |
| **AIMIEE ULREY,** | ) | |
| **NURSE STEVENS,** | ) | |
| **NURSE AREBURCKLE,** | ) | |
| **NURSE GERAD, and** | ) | |
| **TRAVIS JAMES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Bryant H. Harvey, Jr., is an inmate currently housed in Dixon Correctional Center. Pursuant to 42 U.S.C. § 1983, Plaintiff brings this action for deprivations of his constitutional rights, primarily related to his medical treatment while housed at Lawrence Correctional Center in 2015.

This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. The Court is required to dismiss any portion of the complaint that is legally

frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## <u>The Complaint</u>

The complaint presents a virtual diary of incidents occurring between July 1 and October 6, 2015. The following synopsis focuses on the events involving the named defendants, as there are no unidentified "John Doe" defendants.

According to the complaint, Plaintiff Harvey has been diagnosed with sickle cell anemia, Wolff-Parkinson-White syndrome, seizures, and damaged hip joints. His relapsing-remitting symptoms cause him to sometimes use a wheelchair and at other times a cane. Prison doctors authorized numerous permits for related accommodations.

Some of the medical accommodation permits were not honored. For example, Plaintiff was given a wheelchair, but was then placed in a cell that was not large enough to accommodate the wheelchair, leaving Plaintiff to rely upon others to help him move around the cell. The prison

did have "ADA[1] cells." Director of Nursing Dr. Phil Martin, Dr. John Coe, and Warden Stephen B. Duncan were notified orally and through request slips and grievances that Plaintiff's disabilities were not being accommodated as required under the ADA. On June 1, 2015, Plaintiff lodged a formal grievance. He tried to discuss the matter with Assistant Warden Beth Tredway, but she became accusatory and argumentative.

A few weeks later, on June 19, Plaintiff went into sickle cell crisis and was lying on the floor of his cell for an hour before help arrived. A similar incident occurred on July 4. On July 13, Plaintiff was forced to "endure" a cold shower, which doctors had purportedly advised against. No named defendants were involved in these incidents.

On July 26, Plaintiff sent a letter to the Administrative Review Board complaining that Warden Duncan was not responding to emergency grievances. Sherry Benton, Administrator of the Office of Inmate Issues, had the power to direct Warden Duncan to act, but Benton did nothing.

A sickle cell specialist recommended that Plaintiff be referred for consideration of a bone marrow transplant. Plaintiff further asserts that it was also recommended that he be seen by an orthopedist regarding a hip replacement. The transplant recommendation was sent to Wexford Medical Health Services ("Wexford") and Dr. John Coe. On August 10, Dr. Coe concluded that transplants were not covered under the contract between the Illinois Department of Corrections ("IDOC") and Wexford for medical care, so Plaintiff's condition would continue to be treated at the prison (*see* Doc. 1-1, p. 41). According to Plaintiff, Dr. Coe said IDOC would not pay for the bone marrow transplant, hip replacement, or any major surgery.

---

[1] Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, prohibits discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability.

On August 4, Plaintiff admittedly refused his medication because he was experiencing stomach pain and nausea. He argued with the (unidentified) nurses, who warned that the next time Plaintiff had a sickle cell attack he should not call them because he would be left to die. When Plaintiff experienced a sickle cell attack on September 3, Nurse Ulrey did not take the situation seriously, calling Plaintiff a "big baby," and saying that she was so tired of responding to his calls for help that she wished he would die. Nurse Ulrey directed Plaintiff to get up from the floor and into his wheelchair; when Plaintiff said he was unable, Ulrey and C/O Turner lifted Plaintiff into the wheelchair. At some point, C/O Turner stepped on Plaintiff with his full weight. Plaintiff was then taken to the Health Care Unit.

In the Health Care Unit, Plaintiff was placed in an isolation room that was extremely cold. Plaintiff was in excruciating pain, so he screamed for help for three hours, but unidentified nursing staff ignored him. Dr. Coe finally arrived to examine Plaintiff. Dr. Coe opined that he was not concerned about Plaintiff's situation, as long as Plaintiff was not experiencing priapism from the sickle cell attack. When Plaintiff reported that he was cold, Dr. Coe had Plaintiff moved into the infirmary ward.

Plaintiff next asked Dr. Coe about getting pain medication. Dr. Coe explained that he did not treat chronic conditions with pain medication, but Plaintiff could have Tylenol. Dr. Coe was not persuaded by Plaintiff's assertion that Tylenol was inadequate to treat his excruciating pain—the doctor walked away. Nurse Gerad gave Plaintiff the first dose of Tylenol, but when Plaintiff requested the next dose, Nurse Gerad did not return with the medicine for two hours.

The next morning—September 4—Plaintiff showed Dr. Coe his swollen knee and reported that his chest, arms, and legs were still in severe pain. Dr. Coe said there was nothing else that he could do and sent Plaintiff back to his cell in excruciating pain.

On September 16, Plaintiff was experiencing painful priapism as a result of a sickle cell attack. Physician's Assistant ("PA") Travis James examined Plaintiff and indicated he was not worried about the sickle cell disease; he just wanted to treat the priapism by manually squeezing the blood from Plaintiff's penis. A female guard was present, so Plaintiff objected to the procedure. PA James explained that two people had to be present in the room. Rather than summon a male, James directed Plaintiff to sign a form refusing treatment. Plaintiff was returned to his cell with no treatment.

On October 6, Plaintiff filed a grievance relative to Dr. Coe's switch from prescribing Tylenol to Ibuprofen, because Plaintiff was allergic to Ibuprofen. He also spoke directly to Dr. Coe, who said he did not care and Plaintiff should either take the Ibuprofen or be in pain.

The complaint generally asserts that Warden Duncan, Assistant Warden Tredway, and Administrator Benton ignored all of these incidents, and through policy and custom created an unsafe and inadequate medical environment that endangered Plaintiff's life. It is similarly alleged that Wexford had a policy and custom of "haphazardly" treating Plaintiff and not paying for recommended treatments for his serious medical needs.

Plaintiff contends Defendants were deliberately indifferent to his serious medical needs and used excessive force, all in violation of the Eighth Amendment. He requests declaratory judgment, compensatory, punitive and nominal damages, and unspecified injunctive relief.

Based on the allegations in the complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

**Count 1:   Defendants Martin, Coe, Duncan, and Tredway failed to ensure Plaintiff received accommodations for his disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Eighth Amendment;**

**Count 2:   All Defendants were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment; and**

**Count 3:   Defendant Tanner used excessive force against Plaintiff, in violation of the Eighth Amendment.**

Any intended claims that have not been recognized should be considered dismissed without prejudice as inadequately pleaded under the *Twombly* standard.

## Discussion

### *Cunningham, Stevens, and Areburckle*

Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Allegations that senior officials were personally responsible for creating the policies, practices, and customs that caused a constitutional deprivation can suffice to demonstrate personal involvement for purposes of Section 1983 liability. *See Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002). However, the *respondeat superior* doctrine—supervisory liability—does not apply to actions filed under 42 U.S.C. § 1983. *See,* e.g., *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Moreover, merely naming a defendant in the case caption is insufficient to state a claim. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998).

Director of Nursing Cunningham, Nurse Stevens, and Nurse Areburckle are named defendants, but they are not mentioned in the narrative of the complaint. Consequently, Cunningham, Stevens, and Areburckle will be dismissed without prejudice.

### Count 1

Count 1 is premised upon the allegations that Plaintiff notified Director of Nursing Dr. Phil Martin, Dr. John Coe, Warden Stephen B. Duncan, and Assistant Warden Beth Tredway that his disabilities were not being accommodated as required under the ADA—all to no avail, leaving him unable to ambulate around his cell. In consideration of Plaintiff's *pro se* status, the Court has recognized claims under the ADA, 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.,* and the Eighth Amendment.

The ADA and the Rehabilitation Act prohibit discrimination against qualified individuals because of their physical or mental disability, including a failure to accommodate a disability. The Rehabilitation Act further requires that a plaintiff show that the program in which he was involved received federal financial assistance. *Jackson v. City of Chicago,* 414 F.3d 806, 810 n.2 (7th Cir. 2005); *see also* 29 U.S.C. § 794(a); *Novak v. Bd. of Trustees of S. Ill. Univ.,* 777 F.3d 966, 974 (7th Cir. 2015). The two statutory schemes are applicable to this situation.

In *United States v. Georgia,* 546 U.S. 151 (2006), the Supreme Court concluded that a disabled inmate can sue a state for money damages under Title II of the ADA for "deliberate refusal of prison officials to accommodate [the inmate's] disability-related needs in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs." *Id.* at 157–159. The Seventh Circuit has also recognized that access to certain housing facilities, including showers, toilets, and sinks in a prison setting, is among the programs and activities protected by the ADA and the Rehabilitation Act. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667,

672 (7th Cir. 2012); *see also Phipps v. Sheriff of Cook County,* 681 F.Supp.2d 899, 916 (N.D.Ill.

2010); *Pennsylvania Dep't of Corr. v. Yeskey,* 524 U.S. 206 (1998). In addition to Plaintiff's

verbal and written complaints about the lack of accommodations, Plaintiff's need for an

accommodation seems "obvious" and sufficient to impute that knowledge to prison officials. *See*

*Robertson v. Las Animas County Sheriff's Dep't,* 500 F.3d 1185, 1196–98 (10th Cir. 2007);

*Kiman v. New Hampshire Dep't of Corr.,* 451 F.3d 274, 283 (1st Cir. 2006). Therefore, ADA

and Rehabilitation Act claims have been adequately stated, at least insofar as Plaintiff's mobility

is concerned.

An Eighth Amendment claim also has been stated. The Eighth Amendment to the United

States Constitution protects prisoners from being subjected to cruel and unusual punishment.

U.S. CONST., amend. VIII. *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Eighth

Amendment protection extends to conditions of confinement that pose a substantial risk of

serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680

F.3d 984 (7th Cir. 2012). A prison official may be liable "only if he knows that inmates face a

substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The wanton infliction of pain—such as

being forced to ambulate rather than use a wheelchair—arguably violates the Eighth

Amendment, *see Jaros*, 684 F.3d at 671 (citing *Forrest v. Prine,* 620 F.3d 739, 744 (7th Cir.

2010)).

Although Count 1 generally states colorable claims under the Eighth Amendment, the

ADA, and the Rehabilitation Act, that does not end the analysis. Neither statutory act provides

for punitive damages. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir.

2014). Furthermore, the only proper defendant in a claim under the ADA or the Rehabilitation

Act is the state agency (or a state official acting in his or her official capacity). *See* 29 U.S.C. § 794(b); 42 U.S.C. § 12131." *Jaros,* 684 F.3d at 670 (additional citations omitted). Plaintiff has not included IDOC as a named defendant, but Defendants are sued in their individual *and* official capacities. Official capacity suits are the equivalent of suing the IDOC.

With respect to the Eighth Amendment aspects of Count 1, Defendants may be liable for monetary damages in their individual capacities, but monetary damages are not available from them in their official capacities. *See, e.g., Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989); *Kentucky v. Graham,* 473 U.S. 159, 165–66 (1985).

The ADA and Rehabilitation Act aspects of Count 1 shall proceed against Defendants Martin, Coe, Duncan, and Tredway in their official capacities for declaratory judgment, as well as nominal and compensatory damages, but not punitive damages. The Eighth Amendment claims shall proceed against Defendants Martin, Coe, Duncan, and Tredway in their individual capacities for declaratory judgment, as well as nominal, compensatory, and punitive damages. Because Plaintiff is no longer housed at Lawrence Correctional Center, the need for injunctive relief relative to this claim is moot.

***Count 2***

Count 2 alleges all Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment. This claim is premised upon the many medical incidents set forth in the complaint and summarized above by date of occurrence. The Court need only concern itself with incidents involving named defendants; other incidents are described for context.

Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety. *See Estate of Miller, ex rel. Bertram*

*v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A medical condition need not be life-threatening to be serious; rather, it can be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). Even those not directly involved in providing medical care—"non-medical defendants"—can be liable. *See Perez v Fenoglio*, 792 F.3d 768, 781-782 (7th Cir. 2015).

The following incidents (more fully described above) state colorable claims and shall proceed:

a. Defendant Benton's failure to respond to Plaintiff's July 26, 2015, letter regarding Warden Duncan's failure to respond to emergency grievances;

b. Defendant Coe's August 10, 2015, rejection of the recommendation regarding a bone marrow transplant and hip replacement;

c. Defendant Coe's September 3, 2015, denial of effective pain medication, prescribing only Tylenol;

d. Defendant Gerad's September 3, 2015, delay in providing Plaintiff with Tylenol;

e. Defendant Coe's September 4, 2015, refusal to treat Plaintiff's severe pain or otherwise treat Plaintiff;

f. Defendant James's September 16, 2015, failure to treat Plaintiff's priapism and pain stemming from a sickle cell attack;

g. Defendant Coe's October 16, 2015, insistence that Plaintiff either take a medication he is allergic to or go without pain relief; and

h. Defendants Duncan, Benton, and Tredway's knowingly allowing Plaintiff's serious medical needs to go untreated, whether by policy, practice or custom.

The remaining claims must be dismissed for the following reasons (the alphabetical sequence will be continued for easy reference):

i.  On August 1, 2015, when Dr. Coe rejected the recommendation regarding a bone marrow transplant and hip replacement, Dr. Coe noted that Wexford's contract with the IDOC did not cover transplants, and he further stated the IDOC did not offer major surgery. In negotiating a contract to provide medical services to the IDOC, Wexford was not a state actor, it was a private entity, and therefore not subject to liability under Section 1983. The implication of the contract is that transplants would be the responsibility of the State. Therefore, this subpart of Count 2 will be dismissed with prejudice, and Wexford will be dismissed from Count 2 with prejudice.

j.  The allegations regarding Nurse Ulrey and C/O Tanner being in Plaintiff's cell on September 3, 2015, fail to state a claim under the *Twombly* pleading standard. It is not clear that Nurse Ulrey did not treat Plaintiff, even though she made statements indicating that she wished he would die—she and C/O Tanner did take Plaintiff to the Health Care Unit. This subpart of Count 2, along with Ulrey and Tanner, will be dismissed without prejudice.

k.  The allegations that on September 3, 2015, Dr. Coe examined Plaintiff and stated that he was not worried about Plaintiff's sickle cell disease as long as there was no priapism, alone, does not state a claim. Furthermore, when Plaintiff stated he was cold, Dr. Coe had him moved to the infirmary. Therefore, under the *Twombly* pleading standard, no claim has been stated. This subpart of Count 2 will be dismissed without prejudice.

l.  The allegations that Wexford had a policy and custom of "haphazardly" treating Plaintiff fails to state an Eighth Amendment claim. Deliberate indifference, not haphazardness or negligence, is required to state an Eighth Amendment claim. As pleaded, this claim is a bald assertion. There is nothing in the complaint from which to infer a corporate policy or custom. This aspect of Count 2 will be dismissed without prejudice.

***Count 3***

Count 3 pertains to the allegation that on September 3, 2015, C/O Tanner used excessive force against Plaintiff when he stepped on Plaintiff with his boot and full weight, apparently while Tanner and Nurse Ulrey were lifting Plaintiff from the floor and into a wheelchair. At best, negligence, not deliberate indifference is suggested. Count 3 and C/O Tanner will be dismissed without prejudice.

*Severance*

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits, "not only to prevent the sort of morass" produced by multi-claim, multi-defendant suits "but also to ensure that prisoners pay the required filing fees" under the Prison Litigation Reform Act. *George*, 507 F.3d at 607, (citing 28 U.S.C. § 1915(b), (g)).

Although a party may join "as many claims as it has against an opposing party, claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George*, 507 F.3d at 607. Multiple defendants can be joined in a single action, but only if: "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2).

Although Counts 1 and many subparts of Count 2 state viable claims, it is not clear at this early juncture that all claims and parties can proceed together in a single action. Reading the complaint generously, the remaining aspects of Counts 1 and 2 are related factually and legally. Therefore, no claims or Defendants will be severed at this time. Plaintiff should be aware, however, that severance remains a possibility as the case proceeds. In the event that the Court concludes that the claims cannot proceed together, additional cases may have to be opened, which will require Plaintiff to pay additional filing fees.

## <u>Disposition</u>

**IT IS HEREBY ORDERED** that, for the reasons stated, Defendants **CUNNINGHAM, NURSE STEVENS, and NURSE AREBURCKLE** are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that the ADA and Rehabilitation Act aspects of **COUNT 1** shall **PROCEED** against Defendants **DR. PHIL MARTIN, JOHN COE, STEPHEN B. DUNCAN, and BETH TREDWAY** in their official capacities for declaratory judgment, nominal and compensatory damages, but not punitive damages and injunctive relief. The Eighth Amendment claims shall proceed against Defendants **DR. PHIL MARTIN, JOHN COE, STEPHEN B. DUNCAN, and BETH TREDWAY** in their individual capacities for declaratory judgment, nominal, compensatory and punitive damages, but not injunctive relief.

**IT IS FURTHER ORDERED** that the claims in **COUNT 2(a)-(h)** shall **PROCEED** against Defendants **SHERRY BENTON, JOHN COE, NURSE GERAD, TRAVIS JAMES, STEPHEN B. DUNCAN, and BETH TREDWAY**; **COUNT 2(i)** is **DISMISSED with prejudice**; the claims in **COUNT 2(j)-(l)** are **DISMISSED without prejudice**; and Defendants **WEXFORD MEDICAL HEALTH SERVICES CO. and AIMIEE ULREY** are **DISMISSED without prejudice** from **COUNT 2 and this action**.

**IT IS FURTHER ORDERED** that **COUNT 3** and Defendant **C/O TANNER** are **DISMSSED without prejudice.**

The Clerk of Court shall prepare for Defendants **STEPHEN B. DUNCAN, BETH TREDWAY, JOHN COE, SHERRY BENTON, DR. PHIL MARTIN, NURSE GERAD, and TRAVIS JAMES**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. Accordingly, Plaintiff's motion for service of process at government expense (Doc. 4) is **DENIED as moot**. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the

forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Donald G. Wilkerson** for further pre-trial proceedings, including consideration of Plaintiff's motion for counsel.

Further, this entire matter shall be **REFERRED** to a United States Magistrate for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* may have been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  April 26, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**