IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BRYANT H. HARVEY, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-CV-343-NJR-DGW |
| | ) | |
| STEPHEN B. DUNCAN, | ) | |
| BETH TREDWAY, | ) | |
| JOHN COE, | ) | |
| SHERRY BENTON, | ) | |
| DR. PHIL MARTIN, | ) | |
| MS. KIM GARRARD, and | ) | |
| TRAVIS JAMES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Report and Recommendation of Magistrate Judge Donald G. Wilkerson (Doc. 86), which recommends denying the Motion for Partial Summary Judgment filed by Defendant Dr. John Coe (Doc. 64) and granting in part and denying in part the Motion for Summary Judgment filed by Defendants Stephen Duncan, Beth Tredway, Sherry Benton, and Phil Martin ("IDOC Defendants") (Doc. 66). Defendant Dr. Coe timely objected to the Report and Recommendation on July 23, 2018 (Doc. 87). For the following reasons, the Court adopts in part and rejects in part the Report and Recommendation.

### BACKGROUND

Plaintiff Bryant Harvey, an inmate of the Illinois Department of Corrections ("IDOC"), filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983 complaining

Defendants violated his constitutional rights while he was housed at Lawrence Correctional Center in the summer and fall of 2015. Specifically, Harvey claims Defendants Martin, Coe, Duncan, and Tredway violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Eighth Amendment when they failed to ensure he received accommodations for his disabilities (Count 1). Harvey also claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment (Count 2).

Harvey has suffered from sickle cell anemia since birth (Doc. 70-1, p. 24). According to Harvey, a sickle cell crisis can occur when he is exposed to extreme temperatures, stress, jaundice of the eyes, or dehydration, among other things (*Id.*, pp. 2-3). When Harvey's body is in sickle cell crisis, it locks up to the point cannot move, walk, stand, or sometimes even talk (*Id.*, p. 3). He also can experience chest pain and priapism, which is a prolonged erection lasting more than four hours (*Id.*, pp. 3, 5). Harvey testified that the pain of a sickle cell crisis "will have you screaming and hollering like a baby, a newborn baby." (*Id.*, p. 4). Harvey had more than ten sickle cell crises while housed at Lawrence (Doc. 67-1, p. 33).

In addition to sickle cell, Harvey also suffers from seizures, avascular necrosis, and Wolff-Parkinson-White syndrome (Doc. 70-1, p. 2). Harvey testified that the avascular necrosis affects his hips, as well as his lower back and knees, and that there are "times that he can't walk." (Doc. 70-1, p. 6). He was not totally confined to a wheelchair, however, and before he was incarcerated, he could walk around the house, to his next-door neighbors' house, and to the mailbox, though he could not play sports (*Id.*, pp. 29-

30). Harvey explained that he would attempt to walk using his forearm crutches at least once a day, even sometimes to the medical line (Doc. 67-1, p. 39-40).

Defendant Dr. John Coe was the medical director at Lawrence during the time relevant to Harvey's claims. Dr. Coe was employed by Wexford Health Sources, Inc., a private company that contracts with the Illinois Department of Corrections (IDOC) to provide certain medical services (Doc. 65-1). On May 21, 2015, Dr. Coe ordered Harvey a wheelchair, a low bunk permit, a low gallery permit, and a wheelchair pusher for an indefinite amount of time (Doc. 65-2, p. 19). On June 15, 2015, Dr. Coe gave Harvey an indefinite permit to carry water with him (*Id.*, p. 20). Dr. Coe further ordered that Harvey should be given an ADA gym permit (*id.*, p. 21), a quad cane (*id.*, p. 22), a cushion for his wheelchair (*id.*, p. 23), daily showers (*id.*, p. 25), an air mattress (*id.*, p. 26), and that his cell to be kept at normal temperatures with no open windows in the cold and a coat to be worn in the school building during the winter (*id.*, pp. 27-28).

Regarding pain management, Dr. Coe stated that he talked to his boss about Harvey because he thought Harvey appeared to be a "drug seeker" (Doc. 68-2, p. 33). Dr. Coe felt it was "bad" to keep Harvey on narcotics on a steady basis as he had been for years, so Dr. Maddox told Dr. Coe to use his medical judgment and treat Harvey's pain as he saw fit (*Id.*). Dr. Coe testified that, in his opinion, Harvey's reports of uncontrolled pain were motivated primarily by his desire to keep taking narcotics (*Id.*, pp. 34-35). Dr. Coe felt Harvey's pain was being controlled by non-narcotic medication, although narcotics were still available if Harvey was experiencing a sickle cell crisis (*Id.*, p. 35). He explained that he has been taught to look at the patient's functional status and ability

rather than their complaints of pain when deciding whether to use narcotics (*Id.*). Regarding Harvey, Dr. Coe stated that the nurses' notes in the infirmary indicated Harvey didn't "seem to have all that much trouble and [was] functioning well without narcotics" (*Id.*, pp. 35-36).

Despite being given a wheelchair upon his transfer to Lawrence Correctional Center (Doc. 70-1, p. 11), Harvey was not immediately placed in an ADA cell. That means he could not take his wheelchair into his cell to get around, and the cell had no handrails to use for support while using the bathroom (*Id.*, pp. 11-12). Instead, correctional officers would take his wheelchair and leave it outside his cell or take it to the "bubble" (*Id.*). According to Dr. Coe, this was because Harvey could walk, and the wheelchair was only prescribed for long distances like going to chow, commissary, church, etc. (Doc. 68-2, p. 42; Doc. 65-1, p. 5). Dr. Coe believed it would not be good for Harvey to never walk or use his muscles at all (*Id.*).

Harvey saw Assistant Warden Beth Tredway, Lawrence's ADA Coordinator, in the school building and explained that his cellmate had to help him to the restroom because he could not get up and get to it by himself (Doc. 70-1, p. 17). He further explained his diagnoses and that prison staff were leaving his wheelchair outside the door (*Id.*). Harvey testified that he believed Tredway knew about his diagnoses prior to that conversation because, as the ADA Coordinator, she had to approve the issuance of his wheelchair (*Id.*, pp. 17-18). He also testified that "any time you're in a chair you get what they call an ADA attendant who lives with you in the cell (*Id.*, p. 18). As the ADA Coordinator, she also would have to approve cell movements (*Id.*).

Even after this conversation, nothing changed (*Id.*, p. 20). Harvey was still in a non-ADA cell, and correctional officers would leave his wheelchair outside his cell (*Id.*). His cellmate would have to help him get around in the cell or, if the cellmate was not present, he would sometimes have to crawl to get to the toilet (*Id.*). Harvey does not recall the amount of time it took between this first conversation with Tredway and his move to an ADA cell, but he recalls her taking his name and number down multiple times (*Id.*, p. 21). Eventually Harvey was moved to an ADA cell, though exactly when is unclear.

On July 1, 2015, Harvey was seen by an outside treating hematologist, Dr. Zhang (Doc. 65-2, p. 8). Dr. Zhang noted that Harvey, who was 19 years old at the time, showed "acute and chronic findings of avascular necrosis in the bilateral femurs" on an MRI taken on February 5, 2015 (*Id.*). Dr. Zhang recommended that Harvey be referred to Dr. John Cunningham "in U Chicago to discuss [bone marrow transplant]" (*Id.*, p. 12). Dr. Zhang also noted that there was no immediate indication for surgery related to his bilateral hip avascular necrosis, but that surgery would be needed "in 5-10 years" (*Id.*).

Harvey's medical records indicate that on July 15, 2015, Dr. Coe referred Harvey to Dr. John Cunningham at the University of Chicago to consider a bone marrow transplant (*Id.*, p. 13). On July 15, 2015, the referral was considered on collegial review by Dr. Coe and Dr. Stephen Ritz, the chairperson of the utilization review committee for Wexford (*Id.*, p. 15, Doc. 68-2, p. 8). It was determined that the referral for a hematology consult for a bone marrow transplant was not authorized because it "did not meet DOC guidelines" (*Id.*). It was agreed that the current treatment plan would continue because IDOC does not cover transplant services (*Id.*). On August 10, 2015, the referral was

officially denied because "[t]ransplants are not covered by IDOC in its contract with Wexford" (*Id.*, p. 14). Thus, the prison would "continue management on site" (*Id.*).

Dr. Coe explained that the IDOC would make its own decision about whether a transplant would be done, while Wexford would make the arrangements for appointments and medications (Doc. 68-2, p. 6). The decision on whether to do a bone marrow transplant would be made by Dr. Louis Shicker, the head IDOC doctor (*Id.*, p. 12). Dr. Coe did not remember ever discussing the bone marrow transplant issue with Dr. Shicker, though he also testified it is not his responsibility to make sure Dr. Shicker knows about a patient who needs a medical procedure not covered by the Wexford contract (*Id.*). Dr. Coe indicated that Wexford "could contact Dr. Shicker themselves," but he did not know whether anyone from Wexford contacted Dr. Shicker about Harvey's bone marrow transplant (*Id.*, p. 14). Conversely, Defendant Phil Martin, Lawrence's Health Care Unit Administrator at the time and an IDOC employee, testified that when a procedure is not covered by the Wexford-IDOC contract, the decision on the procedure would be appealed by the doctor to Dr. Shicker, "if the doctor feels that it needs to be done." (Doc. 65-3, p. 4). In this case, that doctor was Dr. Coe (*Id.*). The procedure also could have been appealed by Martin, an IDOC health services regional administrator, an IDOC agency medical coordinator, or probably the warden as well. (*Id.*).

It is undisputed that Harvey told Defendant Beth Tredway, the Assistant Warden and ADA Compliance Officer, he had been recommended for a hip replacement and bone marrow transplant but the referral for the transplant had been denied due to it not being covered under the contract (Doc. 77, p. 5). It is also undisputed that Harvey filed an

emergency grievance on August 1, 2015, regarding his need to see a bone marrow transplant specialist and orthopedist (Doc. 67, 25:12-26:7). Defendant Stephen Duncan, the warden at Lawrence, is listed as the individual denying the emergency status of that grievance (Doc. 67-1, 27:3-7). Warden Duncan testified, however, that his administrative assistant made the decision after consulting with Defendant Martin and signed the grievance on his behalf (Doc. 67-1, 27:9-29:15). He also did not know if anyone had followed up on the recommendation for Harvey to see an orthopedist (*Id.*, p. 363).

By October 2015, Dr. Coe noted that Harvey was becoming less mobile due to his avascular necrosis and got approval through the utilization review process for an alternating air mattress (Doc. 68-2, p. 28). Dr. Coe testified that inmates' mattresses are very thin, so he ordered Harvey an alternating air mattress to prevent pressure sores (Doc. 70-3, p. 2).

Since transferring to Dixon Correctional Center, Harvey testified that there "might be a minimum change" in how often he has sickle cell crises because he has been housed in the Healthcare Unit where there is central air (*Id.*, p. 7). Harvey testified that at Dixon, "they're wanting to do hip injections and a hip replacement" (*Id.*, p. 29).

Harvey filed this lawsuit on March 28, 2016 (Doc. 1). After threshold review of his complaint pursuant to 28 U.S.C. § 1915A, he was permitted to proceed on the following counts:

> **Count 1:** Defendants Martin, Coe, Duncan, and Tredway failed to ensure Plaintiff received accommodations for his disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*, and the Eighth Amendment;

**Count 2:**  Defendants were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment, specifically:

    a.  Defendant Benton's failure to respond to Plaintiff's July 26, 2015, letter regarding Warden Duncan's failure to respond to emergency grievances;

    b.  Defendant Coe's August 10, 2015, rejection of the recommendation regarding a bone marrow transplant and hip replacement;

    c.  Defendant Coe's September 3, 2015, denial of effective pain medication, prescribing only Tylenol;

    d.  Defendant Gerrard's September 3, 2015, delay in providing Plaintiff with Tylenol;

    e.  Defendant Coe's September 4, 2015, refusal to treat Plaintiff's severe pain or otherwise treat Plaintiff;

    f.  Defendant James's September 16, 2015, failure to treat Plaintiff's priapism and pain stemming from a sickle cell attack;

    g.  Defendant Coe's October 16, 2015, insistence that Plaintiff either take a medication he is allergic to or go without pain relief; and

    h.  Defendants Duncan, Benton, and Tredway's knowingly allowing Plaintiff's serious medical needs to go untreated, whether by policy, practice or custom.

(Doc. 10).

On December 22, 2017, Dr. Coe moved for partial summary judgment on Count 1, Count 2(b), and Count 2(c) (Doc. 64).[1] The IDOC Defendants also filed a motion for summary judgment on all claims against them (Count 1, Count 2(a), and Count 2(h)) (Doc. 66). Magistrate Judge Wilkerson entered a Report and Recommendation on both

---

[1] Dr. Coe did not move for summary judgment on Count 2(e) or Count 2(g). Additionally, Defendants Kim Garrard and Travis James, who are also Wexford employees, did not move for summary judgment.

motions on July 9, 2018 (Doc. 86). Dr. Coe filed objections to the Report and Recommendation (Doc. 87), to which Harvey filed a response (Doc. 88). The IDOC Defendants did not file objections to the Report and Recommendation.

**DISCUSSION**

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Gove's v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). If no objection is made, the Court reviews the Report and Recommendation only for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). In reviewing the Report and Recommendation, the Court must look at all of the evidence contained in the record and give fresh consideration to those issues to which specific objections have been made. *Id.* (quoting 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3076.8, at p. 55 (1st ed. 1973) (1992 Pocket Part)). The Court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**A. LEGAL STANDARD**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).

In responding to a motion for summary judgment, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322–26; *Anderson*, 477 U.S. at 256–57. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact only exists if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson*, 477 U.S. at 252.

## I.   IDOC DEFENDANTS

The IDOC Defendants filed a motion for summary judgment on all claims against them (Count 1, Count 2(a), and Count 2(h)).

### A.  Count 1: ADA and Rehabilitation Act claim

Defendants assert in their motion for summary judgment that they are not appropriate parties under the ADA, even if suit was filed against them in their official capacities, because none of the named Defendants is the Director of the IDOC. Even if they were amenable to suit, however, they are not liable under either the ADA or RA because there had been no medical order for Harvey to have access to his wheelchair

inside his cell. Further, once Defendant Tredway had him placed in an ADA cell, he remained in one from that point forward. Defendants also argued they are not personally involved in inmate placement.

In his Report and Recommendation, Magistrate Judge Wilkerson first found that Defendants Duncan, Martin, and Tredway are amenable to suit in their official capacities under both statutes (Doc. 86). Turning then to the substance of the claim, Magistrate Judge Wilkerson found that Harvey suffers from a qualifying disability and that the IDOC Defendants conceded that Harvey was qualified to participate in the program in question. As to whether Harvey was denied the benefit of that program based on his disability, Magistrate Judge Wilkerson disregarded Defendants' argument that they lacked personal knowledge of Harvey's need for an ADA cell because they were being sued in their official capacities. Additionally, Defendants provided no authority supporting a finding that an "obviously disabled" inmate must put administrators of the institution on notice of his need to be accommodated. Indeed, the evidence as viewed by Magistrate Judge Wilkerson was that Harvey had been issued a wheelchair upon entering Lawrence, and within his first three months there he had two emergency room visits for sickle cell crisis; accordingly, a jury could find the prison had institutional knowledge of his disability, need for a wheelchair, and his need for an accessible cell.

Furthermore, because it is uncontested that Defendant Tredway, the ADA coordinator at Lawrence waited until she received a request for an ADA accommodation before acting, Magistrate Judge Wilkerson concluded a jury could find that a policy or practice resulted in Harvey being denied necessary ADA accommodations.

Finally, Magistrate Judge Wilkerson found that Harvey was denied services of the prison when he could not access parts of his cell such as the toilet because he had no access to a wheelchair in his cell. Thus, Magistrate Judge Wilkerson recommended that summary judgment be denied to the IDOC Defendants on Harvey's ADA and Rehabilitation Act claims.

### B. Count 1: Deliberate indifference to conditions of confinement claim

Defendants argue Harvey never suffered a complete deprivation of access to facilities to wash or use the toilet. While his avascular necrosis resulted in periods of time where he had difficulty transporting himself, he was able to walk again afterward.

In his Report and Recommendation, Magistrate Judge Wilkerson found that the evidence showed the toilet in Harvey's cell was "literally unavailable to him unless he was carried by his cell mate or crawled across the floor of his cell." Thus, a jury could find that Defendants deprived Harvey of one of life's necessities by failing to provide him with an ADA cell with access to his wheelchair that would have allowed him to use the toilet. As to whether Defendants knew of the conditions of confinement and could have prevented it, Magistrate Judge Wilkerson found that while Dr. Coe said the Assistant Warden was responsible for cell assignments, Defendant Tredway said a doctor must write an order for an ADA accommodation. He then concluded that because Defendants could not agree about who was responsible for placing Harvey in an ADA cell, there is a material issue of fact, and summary judgment is improper.

### C. Counts 2(a) & 2(h): Deliberate indifference to serious medical needs

In Count 2(a), Harvey alleges Defendant Benton was deliberately indifferent when she failed to respond to his July 26, 2015, letter regarding Warden Duncan's failure to respond to emergency grievances. Defendants note that Defendant Benton, who answers grievances at the office of inmate issues (the Administrative Review Board or "ARB"), responded to Harvey's grievances as procedurally deficient without looking at the merits of those grievances. With regard to the letter Harvey sent to the ARB about the Warden's failure to respond to his emergency grievance, Benton did in fact respond to the letter, even if it was not the response Harvey was looking for.

In Count 2(h) Harvey alleges Defendants Duncan, Benton, and Tredway were deliberately indifferent when they knowingly allowed his serious medical needs to go untreated, whether by policy, practice, or custom. Defendants argue they are not qualified to make assessments about the need for the use of a specialist, particularly when it would conflict with the judgment of the facility's treating medical physicians and even when disputed by Harvey, who has no medical education or training on diagnosis. Defendants are not doctors, did not provide direct patient care at Lawrence, and did not dictate medical treatment including but not limited to the collegial review process. Defendants could do nothing more than forward any grievance concerning the patient's health to Wexford employees, so they could arrange for Harvey to receive treatment. Furthermore, Defendant Warden Duncan sometimes did not personally review emergency grievances, and thus would not have the subjective knowledge required for a deliberate indifference claim. In sum, Harvey has no evidence of policies, practices, or

customs of Defendants Duncan, Benton, or Tredway in allowing serious needs to go untreated.

In his Report and Recommendation, Magistrate Judge Wilkerson concluded that summary judgment was inappropriate as to the Defendants in Counts 2(a) and 2(h), except for Defendant Sherry Benton, the ARB Administrator, because her rejection of Harvey's grievances was made in the context of her role as an administrative reviewer and cannot be considered deliberate indifference.

### D. Qualified Immunity

Finally, the IDOC Defendants claim they are entitled to qualified immunity on the ADA and Eighth Amendment claims because they acted based on their understanding of the law. In his Report and Recommendation, Magistrate Judge Wilkerson concluded that none of the IDOC Defendants are entitled to qualified immunity.

### E. Analysis

Because the IDOC Defendants did not object to the Report and Recommendation, *de novo* review is not required. Accordingly, the Court has reviewed Magistrate Judge Wilkerson's Report and Recommendation only for clear error. Following this review, the Court agrees with his findings, analysis, and conclusions, and adopts the portion of the Report and Recommendation pertaining to the IDOC Defendants. Their motion for summary judgment is denied as to Count 1; granted as to Count 2(a); and granted in part as to Sherry Benton and denied in part as to Warden Duncan and Beth Tredway on Count 2(h).

## II.  DR. JOHN COE

Dr. Coe moved for partial summary judgment on Count 1, Count 2(b), and Count 2(c). Because Dr. Coe has objected to the Report and Recommendation as it applies to him, the Court must review that portion of the analysis *de novo*.

### A.  Count 1: ADA and Rehabilitation Act claim

In his motion for summary judgment, Dr. Coe first argues he is entitled to judgment as a matter of law on Harvey's ADA and Rehabilitation Act claim in Count 1 because Dr. Coe is not a "public entity" as is required to prevail under those statutes and does not receive federal monies, as is required to prevail under the Rehabilitation Act. Harvey has conceded that point, so the ADA and RA claims against Dr. Coe shall be dismissed.

### B.  Count 1: Deliberate indifference to conditions of confinement claim

Dr. Coe asserts he is entitled to summary judgment on Harvey's deliberate indifference to conditions of confinement claim in Count 1 for failing to ensure he was always provided with a wheelchair friendly cell. Dr. Coe notes that Harvey was able to walk. Dr. Coe did not want him walking long distances due to his avascular necrosis, however, so he ordered a wheelchair for Harvey to use for long distances. Dr. Coe asserts he was not deliberately indifferent—*i.e.*, criminally reckless—in ordering Harvey a wheelchair but not recommending a cell that could accommodate a wheelchair. Dr. Coe also argues that he does not control inmate cell placement, as the Assistant Warden of Operations coordinates cell assignments.

As previously mentioned, Magistrate Judge Wilkerson found in his Report and

Recommendation that the evidence showed the toilet in Harvey's cell was "literally unavailable to him unless he was carried by his cell mate or crawled across the floor of his cell." Thus, a jury could find that Defendants deprived Harvey of one of life's necessities by failing to provide him with an ADA cell with access to his wheelchair that would have allowed him to use the toilet. As to whether Defendants knew of the conditions of confinement and could have prevented it, Magistrate Judge Wilkerson found that while Dr. Coe said the Assistant Warden was responsible for cell assignments, Defendant Tredway said a doctor must write an order for an ADA accommodation. He then concluded that because Defendants could not agree about who was responsible for placing Harvey in an ADA cell, there is a material issue of fact, and summary judgment is improper.

Dr. Coe objects to Magistrate Judge Wilkerson's conclusion that there is a factual dispute as to who is responsible for ADA cell assignments. Dr. Coe says there is no dispute of fact: a doctor must write an order allowing for an ADA accommodation, then the IDOC makes arrangements as necessary. Because there is no factual dispute, summary judgment should be granted to Dr. Coe on Count 1.

In response to Dr. Coe's objection, Harvey argues that even if there is a multi-step process for providing and approving wheelchair-accessible cells, Dr. Coe fails to explain how that is relevant to the deliberate indifference claim against him in Count 1.

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishment clause. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993). First, the prisoner must

show that, objectively, the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Second, from a subjective point of view, the inmate must demonstrate that the defendants acted with a sufficiently culpable state of mind, namely, deliberate indifference. *McNeil*, 16 F.3d at 124. Deliberate indifference exists only where an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38. "'Deliberate indifference' means recklessness in a criminal, subjective sense: disregarding a risk of danger so substantial that knowledge of the danger can be inferred." *James v. Milwaukee Cty.*, 956 F.2d 696, 700 (7th Cir. 1992). Negligence, even gross negligence, does not constitute deliberate indifference. *Garvin v. Armstrong,* 236 F.3d 896, 898 (7th Cir. 2001).

In this case, the Court agrees with Dr. Coe that he is entitled to summary judgment on Count 1. The evidence in the record indicates that Dr. Coe ordered numerous accommodations for Harvey but did not order an ADA cell because Harvey was able to walk when he was not suffering from a sickle cell crisis or when his body would lock up from his avascular necrosis.[2] Dr. Coe testified that he only ordered the wheelchair for

_____

[2] Magistrate Judge Wilkerson's finding of fact that Harvey's cellmate was responsible for carrying him around the cell or, if the cellmate was not present, Harvey would have to crawl around, is a mischaracterization of the evidence. The only reference the Court could find to Harvey's cellmate carrying him around was in Defendant Duncan's deposition, where he referred to a grievance written by Harvey's cellmate stating he had to carry Harvey around the room while Harvey was "still in crisis and under

long distance purposes, as he believed it would harm Harvey's muscles to never walk. Under these circumstances, the Court finds that Dr. Coe's failure to order an ADA cell amounts to, at most, negligence, but not deliberate indifference. Further, the Court finds the matter of who was actually responsible for assigning Harvey to an ADA cell to be irrelevant, as the evidence indicates Dr. Coe did not act with criminal recklessness in depriving Harvey of an ADA cell.

### C. Counts 2(b): Deliberate indifference to serious medical needs

In Count 2(b), Harvey alleges Dr. Coe was deliberately indifferent on August 10, 2015, when he rejected the recommendation regarding a bone marrow transplant and hip replacement. Dr. Coe argues that Harvey's treating hematologist, Dr. Zhang, never documented that Harvey required a bone marrow transplant. Rather, the only recommendation was that Harvey *see* a specialist in Chicago to *discuss* a bone marrow transplant. Accordingly, Dr. Coe did not know of and disregard an excessive risk to Harvey's health. Furthermore, Dr. Coe did not deny Harvey the bone marrow transplant consultation but rather submitted a referral to the specialist to Wexford's collegial review for approval. Because bone marrow transplants are not covered in the Wexford-IDOC contract, however, it is the IDOC and not Wexford that is responsible for providing such care. And pursuant to IDOC policy, the IDOC's Agency Medical Director must approve inmate transplant procedures.

---

extreme pain." (Doc. 67-1, p. 395). This does not indicate Harvey, at all times, had to be carried around the room by his cellmate. Nor is there evidence to support that Harvey had to crawl around his cell at all times. Instead, Harvey stated that he could not walk during his sickle cell crises and sometimes could not walk due to his avascular necrosis because his hips would lock up, anywhere from five minutes to hours a day (Doc. 67-1, pp. 32-39).

Dr. Coe further argues that Harvey's claim in Count 2(b) that he denied hip replacement surgery despite Dr. Zhang's recommendation is not supported by the evidence. Dr. Coe asserts that Dr. Zhang's medical notes indicate he consulted with an orthopedist and determined immediate surgery was not needed, Harvey would not require a hip replacement for five to ten years, and Harvey did not require any activity restrictions.

In his Report and Recommendation, Magistrate Judge Wilkerson first recommended that summary judgment be denied as to Dr. Coe on Harvey's claim that Dr. Coe denied him a bone marrow transplant. Referring to Dr. Coe's argument as "verbal gymnastics," Magistrate Judge Wilkerson found that a jury could find Dr. Zhang's recommendation to "discuss" or "consider" a bone marrow transplant was made because Dr. Zhang believed Harvey likely needed one. And even though Dr. Coe attempted to make a referral to the specialist, it was denied on collegial review because transplants are not covered in the Wexford-IDOC contract. Because there is no evidence as to how the need for a transplant is then conveyed from Dr. Coe to the IDOC Medical Director, and because Harvey disputes whether Dr. Coe took the necessary steps to ensure the IDOC had the opportunity to consider approving a bone marrow transplant, summary judgment is inappropriate.

Next, Magistrate Judge Wilkerson found that summary judgment should be denied to Dr. Coe as to the claim in Count 2(b) that on August 10, 2015, he refused to refer Harvey to an orthopedist to assess Harvey's need for a hip replacement as recommended by Dr. Zhang. While Magistrate Judge Wilkerson found that Dr. Zhang's July 2015 report

alone is insufficient to find Dr. Coe deliberately indifferent, he concluded that whether
Dr. Coe should have *independently* referred Harvey to an orthopedist is an issue of fact.
While Dr. Coe asserts that Harvey's hips were doing well while he was at Lawrence,
Harvey claims his avascular necrosis got significantly worse. Dr. Coe also admitted
ordering Harvey a quad cane, wheelchair cushion, wheelchair pusher, and an air mattress
subsequent to Dr. Zhang's report. Furthermore, since being transferred to Dixon
Correctional Center in 2016, Harvey has been recommended for hip injections and a hip
replacement. Given this evidence, Magistrate Judge Wilkerson concluded a jury could
find Dr. Coe's failure to independently refer Harvey for an orthopedic evaluation for hip
replacement constitutes deliberate indifference.

Dr. Coe objects to Magistrate Judge Wilkerson conclusion and asserts that he is
entitled to summary judgment on Count 2(a). Dr. Coe argues he is under no obligation to
follow a recommendation of another physician. Further, Magistrate Judge Wilkerson's
suggestion that a jury could reasonably infer the recommendation to "discuss" or
"consider" a bone marrow transplant was made because Dr. Zhang believed Harvey
likely needed one is likewise illogical and unsupported by any testimony from Dr. Zhang
or any other evidence submitted by Harvey. And, Dr. Coe *did* in fact submit the referral
to collegial review. The fact that the referral was later rejected because transplants are not
covered in the Wexford-IDOC contract is irrelevant to the deliberate indifference
analysis. As for the hip replacement, Dr. Coe argues that there was no immediate need
for Harvey to see a specialist, as demonstrated by Dr. Zhang's report that such a
procedure would be necessary in five to ten years. Dr. Coe asserts that Magistrate Judge

Wilkerson inserted his own reasoning and opinion to contradict that of Dr. Coe and Dr. Zhang's expertise. The decision not to send Harvey to an orthopedic specialist constitutes medical negligence at most, not deliberate indifference.

In response to Dr. Coe's objection, Harvey argues that Dr. Coe testified he generally follows the recommendations of specialists unless, in his medical judgment, it is not sensible. And because he decided to recommend onsite treatment for the economic reason that transplants were not covered by the Wexford-IDOC contract, he did not use his medical judgment in this instance. He also failed to refer the issue to the IDOC's medical director when it was determined that Wexford does not cover transplants, creating a question of fact as to whether he used any medical judgment.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, a plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). In this case, there is no dispute that Harvey suffered from objectively serious medical conditions.

Second, a prisoner must show that prison officials acted with deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to

violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987).

It is true Dr. Coe made a referral for Harvey to see a specialist to discuss a bone marrow transplant and that the referral went to collegial review before being denied as not covered by the Wexford-IDOC contract. There is no constitutional violation just because a certain medical procedure is not covered by a private corporation's contract with the State of Illinois. The problem lies with what happened after the denial. While Dr. Coe testified that it became the IDOC's responsibility to decide whether or not to provide the transplant (should a transplant have been determined to be needed), it is undisputed that Dr. Coe did not inform Dr. Shicker of the recommendation that Harvey see a specialist. While a number of other people also could have appealed the denial to the IDOC, a question of fact remains as to whether Dr. Coe was deliberately indifferent in failing to do so. Accordingly, summary judgment is improper as to this portion of Count 2(b).

As for Dr. Coe's refusal to refer Harvey to an orthopedist to assess Harvey's need for a hip replacement in August 2015, Magistrate Judge Wilkerson found that while Dr. Zhang's July 2015 report alone was an insufficient basis on which to find Dr. Coe deliberately indifferent, whether Dr. Coe should have *independently* referred Harvey to an orthopedist is an issue of fact. The Court disagrees. Dr. Coe testified that Harvey's hips were doing well at Lawrence, and that he would have sent Harvey to see an

orthopedist if he had started having "a lot more trouble" (Doc. 65-1, p. 9). Dr. Coe further testified that he "didn't see a need for him to see an orthopedic physician at the time that he came back from seeing Dr. Zhang on July 1st . . . [H]e already had the wheelchair and stuff so, and he wasn't really having that much trouble with his hips . . . ." (*Id.*, p. 9). Furthermore, Harvey had just seen the orthopedist in February 2015, and the recommendation for a hip transplant in five to ten years came from that visit. Finally, the Court fails to see how the condition of Harvey's hips in 2016 is relevant to his treatment in August 2015. On this evidence, no reasonable jury could find Dr. Coe deliberately indifferent for failing to independently refer Harvey to an orthopedist in August 2015.

### D. Counts 2(c): Deliberate indifference to serious medical needs

In Count 2(c), Harvey alleges Dr. Coe was deliberately indifferent on September 3, 2015, when he denied Harvey effective pain medication, and prescribed only Tylenol. Dr. Coe argues that he believed Harvey's pain was usually controlled from an objective standpoint with non-narcotic medications, and he believed based on his medical judgment that Harvey's desire to take narcotic medication stemmed from habit rather than for pain management. Dr. Coe asserts this was a decision based on his medical judgment and not any conscious disregard for Harvey.

In his Report and Recommendation, Magistrate Judge Wilkerson found there was evidence from which a jury could conclude that Dr. Coe's refusal to prescribe a narcotic pain killer was a significant departure from accepted professional standards or practices. Accordingly, summary judgment is inappropriate as to Dr. Coe.

Dr. Coe objects to Magistrate Judge Wilkerson's conclusion that a jury could find him deliberately indifferent for denying Harvey narcotic pain medication. Dr. Coe notes that despite Harvey's prior use of narcotic pain medication, it was his medical opinion that Harvey's pain could be controlled (outside of his sickle cell crises) with non-narcotic medications such as Tylenol. Even if a jury were to determine Dr. Coe was wrong, this would merely amount to medical negligence, not deliberate indifference.

In response to Dr. Coe's objection, Harvey argues that Dr. Coe ignored evidence that he was on narcotic painkillers when he was transferred to Lawrence (as recommended by numerous doctors), Dr. Coe took Harvey off those painkillers because he thought Harvey was a drug seeker, and Dr. Coe's "medical judgment" was based on observations from nurses that Harvey was functioning well without narcotics. Thus, there is a question of fact as to whether Dr. Coe used his medical judgment.

The Court agrees with Magistrate Judge Wilkerson that a question of fact remains as to whether Dr. Coe was deliberately indifferent in failing to provide narcotic medication on September 3, 2015. There appears to be no evidence in the record regarding the alleged sickle cell crisis Harvey experienced on September 3, 2015. Indeed, there is only one vague statement by Dr. Coe about sending Harvey to the emergency room a few times, "and a few months later we treated him for a crisis, including Tylenol 3 and he was well by the next day." (Doc. 68-2, p. 36). However, it is unclear to the Court whether this is the incident referred to in the Complaint. Instead, the parties generally dispute whether Harvey generally should have been treated with narcotics on a continual basis.

Accordingly, a question of fact remains as to whether Dr. Coe was deliberately indifferent for failing to prescribe narcotic medication on September 3, 2015.

CONCLUSION

For these reasons, the Court respectfully **ADOPTS in part and REJECTS in part** the Report and Recommendation (Doc. 86). The Motion for Summary Judgment filed by Defendants Duncan, Tredway, Benton, and Martin (Doc. 66) **GRANTED in part and DENIED in part**. Judgment is **GRANTED** in favor of Defendant Benton but denied as to Defendants Duncan, Tredway, and Martin. The Motion for Partial Summary Judgment filed by Dr. Coe (Doc. 64) is **GRANTED in part and DENIED in part.** The ADA and Rehabilitation Act claims in Count 1 are **DISMISSED** as to Dr. Coe. Judgment is **GRANTED** in favor of Dr. Coe on Count 1 and Count 2(b) as to the hip transplant issue only.

This action will now proceed to trial on the following counts:

**Count 1(a):**  Defendants Martin, Duncan, and Tredway failed to ensure Plaintiff received accommodations for his disabilities, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701, *et seq.*

**Count 1(b):**  Defendants Martin, Duncan, and Tredway were deliberately indifferent to Plaintiff's conditions of confinement in violation of the Eighth Amendment;

**Count 2:**  Defendants were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment, specifically:

 b. Defendant Coe's August 10, 2015, rejection of the recommendation regarding a bone marrow transplant;

 c. Defendant Coe's September 3, 2015, denial of effective pain medication, prescribing only Tylenol;

d.  Defendant Gerrard's September 3, 2015, delay in providing Plaintiff with Tylenol;

e.  Defendant Coe's September 4, 2015, refusal to treat Plaintiff's severe pain or otherwise treat Plaintiff;

f.  Defendant James's September 16, 2015, failure to treat Plaintiff's priapism and pain stemming from a sickle cell attack;

g.  Defendant Coe's October 16, 2015, insistence that Plaintiff either take a medication he is allergic to or go without pain relief; and

h.  Defendants Duncan and Tredway knowingly allowing Plaintiff's serious medical needs to go untreated, whether by policy, practice or custom.

A status conference will be set by separate order for the purpose of setting this case for a final pretrial conference and jury trial. The parties are reminded of the availability of a magistrate judge to conduct the trial in this case should they wish to consent.

**IT IS SO ORDERED.**

**DATED:   September 28, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**